## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| DERRICK HAMILTON and SUEANNE HAMILTON, | CIVIL ACTION |
| Plaintiffs, | |
| v. | COMPLAINT  1:17-cv-00692 |
| ROUNDPOINT SERVICING, LLC, TRANSUNION, LLC, and EXPERIAN INFORMATION SOLUTIONS, INC. | JURY TRIAL DEMANDED |
| Defendants. | |

## <u>COMPLAINT</u>

**NOW COME** Derrick Hamilton ("Derrick") and Sueanne Hamilton ("Sueanne") (collectively, "Plaintiffs"), by and through their attorneys,  Sulaiman Law Group, Ltd., complaining of the Defendants, RoundPoint Servicing, LLC ("RoundPoint"), TransUnion, LLC ("TransUnion"),  and  Experian  Information  Solutions,  Inc.,  ("Experian")  (collectively, "Defendants"), as follows:

### NATURE OF THE ACTION

1. Plaintiffs bring this action seeking redress for violations of the Fair Credit Reporting Act ("FCRA") pursuant to 15 U.S.C. §1681, violations of the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA") pursuant to 815 ILCS 505/1 et seq., and violations of the Bankruptcy Discharge Injunction ("Discharge Injunction") under 11 U.S.C. §524.

### JURISDICTION AND VENUE

2. Subject matter jurisdiction is conferred upon this Court by the FCRA, 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.

1

3. The Court has supplemental jurisdiction over the state law ICFA claim under 28 U.S.C. §1367.

4. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendants conduct business in the Northern District of Illinois and all of the events or omissions giving rise to the claims occurred within the Northern District of Illinois.

## PARTIES

5. Plaintiffs are consumers and natural persons over 18-years-of-age who, at all times relevant, resided in the Northern District of Illinois.

6. Defendant RoundPoint is a Florida corporation with its principal place of business at 5016 Parkway Plaza Blvd. Suite 200, Charlotte, North Carolina 28217. RoundPoint is a foreign company whose primary business is the collection of debts owed to others and a creditor, lender, and servicer of mortgage loans across the country, including the State of Illinois. RoundPoint is a furnisher of credit information to the major credit reporting agencies, including Experian and TransUnion.

7. Defendant Experian is a corporation incorporated in the state of Ohio and is authorized to do business in the State of Illinois. Experian is in the business of compiling and maintaining files relating to consumers' credit information bearing on a consumer's credit worthiness, credit standing, or credit capacity, and provides consumer reports to third parties.

8. Defendant TransUnion is a Delaware limited liability corporation with its principal place of business located in Chicago, Illinois. TransUnion is in the business of compiling and maintaining files relating to consumers' credit information bearing on a consumer's credit worthiness, credit standing, or credit capacity, and provides consumer reports to third parties.

## BANKRUPTCY CASE

9. In January 2013, Sueanne executed a note and mortgage in the amount of $115,987 ("subject loan #1) in favor of United Security Financial Corporation ("United Security") secured by a property located at **236** N. Bertram Drive, Yorkville, IL ("subject property #1").

10. Also in January 2013, Derrick executed a note and mortgage in the amount of $124,343 ("subject loan #2) in favor of United Security secured by a property located **148** N. Bertram Drive, Yorkville, IL ("subject property #2").

11. Subject loans #1 and #2 were subsequently transferred to Lenderlive.

12. Unfortunately for Plaintiffs, their financial health deteriorated and Plaintiffs defaulted on subject loan #1 and subject loan #2.

13. On January 28, 2015, Plaintiffs filed a joint Chapter 13 bankruptcy petition in the United States Bankruptcy Court, Northern District of Illinois, Case Number 15-02779 ("bankruptcy").

14. Schedule D of the bankruptcy petition listed subject loan #1, a secured pre-petition debt to Lenderlive, in the amount of $114,764 secured by subject property #1.

15. Schedule D of the bankruptcy petition also listed subject loan #2, a secured pre-petition debt to Lenderlive, in the amount of $122,637 secured by subject property #2.

16. On January 31, 2015, because Plaintiffs listed Lenderlive as a creditor, the Bankruptcy Noticing Center ("BNC") served Lenderlive with notice of Plaintiffs' bankruptcy filing and Plaintiffs' Original Plan.

17. Plaintiffs' Original Plan proposed to treat Lenderlive's claim with respect to subject loan #1 as follows:

> "Debtor is surrendering the real property located at 236 N. Bertram Drive,
> Unit N, Yorkville, Illinois to LenderLive Network, Inc., in full satisfaction
> of its claims."

3

18. Plaintiffs' Original Plan proposed to treat Lenderlive's claim with respect to subject loan #2 as follows:

> "Debtor is surrendering the real property located at 148 N. Bertram Drive, Unit N, Yorkville, Illinois to LenderLive Network, Inc., in full satisfaction of its claims."

19. On March 4, 2015, the 341 Meeting of Creditors was held with the Chapter 13 Trustee.

20. On March 27, 2015, Plaintiffs' Chapter 13 Plan was confirmed by the Honorable Donald R. Cassling.

21. Plaintiffs fully performed their duties and made all payments as set forth in their confirmed Chapter 13 Plan.

22. On September 8, 2015, the Bankruptcy Court entered an Order of Discharge in Plaintiffs' case of all dischargeable debts, including subject loan #1 and subject loan #2.

23. The Order of Discharge expressly stated:

> "The discharge prohibits any attempt to collect from the debtor a debt that has been discharged. For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take any other action to collect a discharged debt from the Debtor…The chapter 13 discharge order eliminates a debtor's legal obligation to pay a debt that is discharged."

24. On or about September 10, 2015, the BNC served Lenderelive with the Order of Discharge.

25. Pursuant to 11 U.S.C. §524, the Order of Discharge invoked the protections of the discharge injunction prohibiting any acts to collect on subject loan #1 and subject loan #2 by Lenderlive, or any other party.

26. Plantiffs' personal liability on subject loan #1 and subject loan #2 were extinguished via their bankruptcy discharge, thus terminating their business relationship with Lenderlive, or any of its successors and assigns.

4

27. On March 14, 2016, Lenderlive sent Plaintiffs a correspondence advising them that effective April 1, 2016, the servicing rights to subject loan #1 and subject loan #2 were being transferred to RoundPoint.

28. Upon information and belief, RoundPoint received notice of Plaintiffs' bankruptcy discharge from its predecessor Lenderlive during the loan onboarding process.[1]

29. After the discharge injunction had taken effect, RoundPoint sought to collect subject loan #1 from Sueanne personally by sending numerous dunning letters attempting to collect on subject loan #1.

30. From April 2016 through January 2017, RoundPoint sent Sueanne dunning letters each month demanding payment on subject loan #1. All the dunning letters stated a "Past Due Amount" and "Amount Due" followed by a five figure balance. Moreover, the dunning letters stated that Sueanne **must** pay the "Amount Due."

31. Each of the dunning letters included a "Due By" date, instructed Sueanne on how to make payments to RoundPoint, and included a payment coupon that stated: "Please detach bottom portion and return with your payment."

32. Furthermore, the dunning letters threatened Sueanne with adverse credit reporting by stating: "RoundPoint Mortgage Servicing Corporation may report information about your mortgage account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report."

---

[1] Pursuant to 12 CFR 1024.38(b)(4), a transferor servicer [Lenderlive] must timely transfer all information and documents in the possession or control of transferor servicer to the transferee servicer [RoundPoint].

33. RoundPoint's collection efforts were highly confusing and upsetting to Sueanne as she was led to believe that her bankruptcy had no legal effect and she was still obligated to pay on the subject loan #1; which was a driving force in her decision to seek bankruptcy protection.

34. All of RoundPoint's collection efforts occurred with actual knowledge of Sueanne's bankruptcy filing and subsequent discharge.

35. Despite having actual knowledge of Sueanne's bankruptcy discharge, RoundPoint brazenly sent dunning letters to Sueanne in an attempt to collect on subject debt #1.

36. Sueanne was unduly inconvenienced and harassed by RoundPoint's unlawful attempts to collect subject loan #1 and suffered emotional distress and mental anguish as RoundPoint's collection activities led her to believe she was still liable on the subject loan #1.

37. Concerned about the violations of their her, Sueanne sought the assistance of counsel to permanently cease RoundPoint's collection efforts.

38. Sueanne has expended time and incurred costs consulting with her attorneys as a result of RoundPoint's false, deceptive, and misleading collection efforts.

### CREDIT REPORTING AND PLAINTIFFS' DISPUTE LETTERS

39. In May 2016, Plaintiffs were alerted of negative entries being reported on their credit reports by their credit monitoring service.

40. Sueanne discovered that Experian, TransUnion and RoundPoint were reporting subject loan #1 as in default with a high balance, a high past due amount, a monthly payment amount, and multiple post-discharge derogatory information.

41. Derrick discovered that Experian, TransUnion and RoundPoint were reporting subject loan #2 as in default with a high balance, a high past due amount, a monthly payment amount, and multiple post-discharge derogatory information.

6

42. The reporting of subject loan #1 and subject loan #2 was inaccurate, incomplete, and materially misleading because subject loan #1 and subject loan #2 were discharged in Plaintiffs' bankruptcy on September 8, 2015, and should be reporting with a zero balance, a zero past due amount, a zero monthly payment amount, and no post-discharge derogatory information.[2]

**a. Plaintiffs' Dispute Letters to Experian and TransUnion**

43. On June 16, 2016, Sueanne sent credit dispute letters to Experian and TransUnion, requesting that her credit files be updated to reflect that she was no longer liable on subject loan #1 by virtue of her bankruptcy discharge.

44. Sueanne's credit dispute letters to Experian and TransUnion specifically referenced subject loan #1 (RoundPoint tradeline) and stated that the status, balance, past due amount, and scheduled payment amount were inaccurate and requested that Experian and TransUnion investigate the errors in her credit files.

45. Also on June 16, 2016, Derrick sent credit dispute letters to Experian and TransUnion, requesting that his credit files be updated to reflect that he was no longer liable on subject loan #2 by virtue of his bankruptcy discharge.

46. Derrick's credit dispute letters to Experian and TransUnion specifically referenced subject loan #2 (RoundPoint tradeline) and stated that the status, balance, past due amount, and scheduled payment amount were inaccurate and requested that Experian and TransUnion investigate the errors in his credit files.

---

[2] To help furnishers comply with their requirements under the FCRA, the Consumer Data Industry Association ("CDIA"), in cooperation with the Credit Reporting Agencies, publishes a Credit Reporting Resource Guide for reporting data called the "Metro 2 Format." The CDIA instructs furnishers and CRAs to report a discharged debt with a $0 balance, a $0 past due amount, and a $0 monthly payment amount to reflect that the consumer is no longer liable on the discharged debt.

47. Plaintiffs sent their dispute letters to Experian and TransUnion via certified mail, return-receipt requested.

48. Upon information and belief, RoundPoint received notice of Plaintiffs' dispute letters from Experian and TransUnion within five days of Experian and TransUnion receiving Plaintiffs' dispute letters. *See* 15 U.S. Code §1681i(a)(2).

**b. Experian's Failure to Correct Inaccurate Information in Sueanne's Credit File**

49. On July 20, 2016, Experian responded to Sueanne's dispute letter by failing to properly reinvestigate the reporting of subject loan #1 (RoundPoint trade line).

50. Specifically, the Experian report revealed that the RoundPoint trade line was reporting a a "Recent balance" of $114,764.00 as of July 2016, a "past due amount" of $30,713.00 as of July 2016, a "Monthly payment" of $865.00, and post-discharge derogatory payment history and account balance.

51. Moreover, Experian failed to designate subject loan #1 as discharged in bankruptcy.

52. The reporting of subject loan #1 was patently inaccurate, incomplete, and created a materially misleading impression that Sueanne is still personally responsible for, delinquent, and obligated to pay a monthly payment on subject loan #1. However, Sueanne was no longer personally liable on the subject loan #1 by virtue of her bankruptcy discharge.

**c. Experian's Failure to Correct Inaccurate Information in Derrick's Credit File**

53. On August 7, 2016, Derrick obtained his full credit report from Experian via his credit monitoring service to verify whether Experian and RoundPoint have updated their inaccurate reporting of subject loan #2.

54. The Experian report revealed that subject loan #2 was reporting a "Balance" of $122,637.00, a "Past Due Amount" of $32,110.00, and a "Monthly payment" of $901.00.

8

55. Moreover, Experian failed to designate subject loan #2 as discharged in bankruptcy.

56. The reporting of subject loan #2 was patently inaccurate, incomplete, and created a materially misleading impression that Derrick is still personally responsible for, delinquent, and obligated to pay a monthly payment on subject loan #2. However, Derrick was no longer personally liable on the subject loan #2 by virtue of his bankruptcy discharge.

### d. TransUnion's Failure to Correct Inaccurate Information in Sueanne's Credit File

57. On July 4, 2016, TransUnion responded to Sueanne's dispute and stated "[b]ased on the information you provided to TransUnion, our records show that the information you disputed does not currently appear on your TransUnion report."

58. On November 10, 2016, Sueanne obtained her full credit report from TransUnion via Credit Karma to verify that TransUnion was not reporting subject loan #1. Notwithstanding TransUnion's representation that subject loan #1 was not reporting on Sueanne's TransUnion report, the report revealed that subject loan #1 was reporting a "Balance" of $114,764.00 as of October 5, 2016, a "Amount Past Due" of $32,444.00 as of October 5, 2016, a "Monthly Payment" of $865.00, and a post-discharge derogatory payment history. Moreover, subject loan #1 was reporting as "120-149 Days Late."

59. The reporting of the RoundPoint trade line was patently inaccurate, incomplete, and created a materially misleading impression that Sueanne is still personally responsible for, delinquent, and obligated to pay a monthly payment on the subject loan. However, Sueanne was no longer personally liable on subject loan #1 by virtue of her bankruptcy discharge entered on September 8, 2015.

### e. TransUnion's Failure to Correct Inaccurate Reporting in Derrick's Credit File

60. On July 1, 2016, TransUnion responded to Derrick's dispute and stated "[b]ased on the information you provided to TransUnion, our records show that the information you disputed does not currently appear on your TransUnion report."

61. On November 10, 2016, Derrick obtained his full credit report from TransUnion via Credit Karma to verify that TransUnion was not reporting subject loan #2. Notwithstanding TransUnion's representation that subject loan #2 is not reporting on Derrick's TransUnion report, the report revealed that subject loan #2 was reporting a "Balance" of $122,637.00 as of October 5, 2016, a "Amount Past Due" of $33,913.00 as of October 5, 2016, a "Monthly Payment" of $901.00, and a post-discharge derogatory payment history. Moreover, subject loan #2 was reporting as "120-149 Days Late."

62. The reporting of the RoundPoint trade line was patently inaccurate, incomplete, and created a materially misleading impression that Derrick is still personally responsible for, delinquent, and obligated to pay a monthly payment on the subject loan. However, Derrick was no longer personally liable on subject loan #2 by virtue of his bankruptcy discharge entered on September 8, 2015.

### IMPACT OF CONTINUING
### INACCURATE INFORMATION IN PLAINTIFFS' CREDIT FILES

63. The erroneous reporting of subject loan #1 and subject loan #2 continues to paint a false and damaging image of Plaintiffs.

64. The entire experience has imposed upon Plaintiffs significant distrust, frustration, distress, and has rendered Plaintiffs helpless as to their ability to regain a firm foothold on their

creditworthiness, credit standing, credit capacity, and their ability to move forward after their bankruptcy discharge.

65. The inaccurate reporting of subject loan #1 and subject loan #2 had significant adverse effect on Plaintiffs' credit ratings because it creates a false impression that Plaintiffs were in default and obligated to pay on subject loan #1 and subject loan #2, rendering them high risk consumers and damaging their creditworthiness.

66. As a result of the conduct, actions, and inaction of Defendants, Plaintiffs have suffered various types of damages as set forth herein, including specifically, the loss of credit opportunities, the loss of ability to benefit from credit, and other frustration and aggravation associated with having inaccurate information in their credit files, time and money expended consulting with their attorneys, tracking the status of their disputes, monitoring their credit files, and mental and emotional pain and suffering.

67. Due to the conduct of Defendants, Plaintiffs were forced to retain counsel to remove the inaccuracies in their credit files.

## COUNT I - VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### (SUEANNE AGAINST ROUNDPOINT)

68. Sueanne restates and realleges paragraphs 1 through 67 as though fully set forth herein.

69. Sueanne is a "consumer" as defined by 15 U.S.C. §§1681a(b) and (c).

70. Sueanne is a "person" as defined by 15 U.S.C. §1681a(b).

71. RoundPoint is a "furnisher of information" as defined by 15 U.S.C. §1681s-2 and a "financial institution" as defined by 15 U.S.C. §1681a(t).

72. At all times relevant, the above mentioned credit reports were "consumer reports" as the term is defined by §1681a(d)(1).

73. RoundPoint violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation with respect to the disputed information after receiving requests for an investigation from Experian, TransUnion and Sueanne.

74. RoundPoint violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by Experian, TransUnion and Sueanne pursuant to 15 U.S.C. §1681i(a)(2).

75. Had RoundPoint reviewed the information provided by Experian, TransUnion and Sueanne, it would have corrected the inaccurate designation of subject loan #1, and transmitted the correct information to Experian and TransUnion. Instead, RoundPoint erroneously confirmed its inaccurate reporting without conducting a reasonable investigation.

76. RoundPoint violated 15 U.S.C. §1681s-2(b)(1)(C) by failing to report the complete results of the investigation or reinvestigation of Sueanne's disputes with Experian and TransUnion.

77. RoundPoint violated 15 U.S.C. §1681s-2(b)(1)(C)-(D) by failing to report the results of its investigation or reinvestigation to Experian and TransUnion after being put on notice and discovering inaccurate, incomplete, and misleading reporting with respect to subject loan #1.

78. RoundPoint violated 15 U.S.C. §1681s-2(b)(1)(E) by failing to modify, delete, or permanently block the inaccurate information from appearing and reappearing in Sueanne's credit files.

79. RoundPoint failed to conduct a reasonable investigation of its reporting of subject loan #1, record that the information was disputed, or delete the inaccurate reporting from Sueanne's credit files within 30 days of receiving notice of a dispute from Experian and TransUnion under 15 U.S.C. §1681i(a)(1).

80. Despite the blatantly obvious errors in Sueanne's credit files, and Sueanne's efforts to correct the errors, RoundPoint did not correct the errors or the trade line to report accurately and

completely. Instead, RoundPoint erroneously furnished and re-reported the inaccurate, incomplete and misleading information after Sueanne's disputes to one or more third parties.

81. Moreover, RoundPoint failed to report subject loan #1 as discharged in bankruptcy, including the failure to communicate that Sueanne disputed the reporting of subject loan #1.

82. RoundPoint's failure to report that Sueanne disputed the accuracy of the trade line was a failure to accurately update the information because it was misleading in such a way and to such an extent that it could be expected to have an adverse effect on Sueanne.

83. A reasonable investigation by RoundPoint would have confirmed the veracity of Sueanne's disputes, yet the inaccurate information continues to be reported in Sueanne's credit files.

84. Had RoundPoint taken steps to investigate Sueanne's valid disputes or Experian and TransUnion's requests for investigation, it would have permanently corrected the erroneous, incomplete, and materially misleading credit reporting. Furthermore, Sueanne's bankruptcy information is public record that is widely available and easily accessible.

85. By deviating from the standards established by the mortgage servicing industry and the FCRA, RoundPoint acted with reckless and willful disregard for its duty as a furnisher to report accurate and complete consumer credit information to Experian and TransUnion.

**WHEREFORE,** Plaintiff SUEANNE HAMILTON respectfully prays this Honorable Court for the following relief:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

b. An order directing that RoundPoint immediately delete all of the inaccurate information from Sueanne's credit reports and credit files;

c. Award Sueanne actual damages, in an amount to be determined at trial, for each of the underlying FCRA violations;

13

d.  Award Sueanne statutory damages of $1,000.00 for each violation of the FCRA, pursuant to 15 U.S.C. §1681n;

e.  Award Sueanne punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;

f.  Award Sueanne costs and reasonable attorney's fees as provided under 15 U.S.C. §1681n and 15 U.S.C. §1681o; and

g.  Award any other relief as this Honorable Court deems just and appropriate.

### COUNT II – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
#### (PLAINTIFFS AGAINST EXPERIAN)

86. Plaintiffs restate and reallege paragraphs 1 through 67 as though fully set forth herein.

87. Experian is a "consumer reporting agency" as defined by 15 U.S.C. §1681a(f).

88. Experian is a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. §1681a(p).

89. At all times relevant, the above mentioned credit reports were "consumer reports" as that term is defined by §1681a(d).

90. At all times relevant, Plaintiffs were "consumers" as the term is defined by 15 U.S.C. §1681a(c).

91. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

92. The FCRA requires that the credit reporting industry to implement procedures and systems to promote accurate credit reporting.

93. If a consumer notifies a credit reporting agency of a dispute concerning the accuracy of any item of credit information, the FCRA requires the credit reporting agency to reinvestigate free

of charge and record the current status of the disputed information, or delete the item within 30 days of receiving the dispute. 15 U.S.C. §1681i(a)(1)(A).

94. Experian prepared Plaintiffs' credit reports containing inaccurate, incomplete, and materially misleading information by reporting subject loan #1 and subject loan #2 with an outstanding balance, a past due amount, a scheduled monthly payment amount, and multiple post-discharge payment history and account history delinquencies, when in fact Plaintiffs had received a bankruptcy discharge, owed no balances, were not past due, and owed no scheduled payments amount on subject loan #1 and subject loan #2.

95. Moreover, Experian failed to report the RoundPoint trade line as discharged in bankruptcy, including the failure to communicate that Plaintiffs disputed subject loan #1 and subject loan #2.

96. A simple review of the relevant documents submitted by Plaintiffs would have confirmed that Plaintiffs had obtained a bankruptcy discharge and were not liable on subject loan #1 and subject loan #2.

97. Experian violated 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in preparation of the consumer reports it furnished and refurnished regarding Plaintiffs. Upon information and belief, Experian prepared patently false, incomplete, and materially misleading consumer reports concerning Plaintiffs. Experian was provided notice of Plaintiffs' bankruptcy discharge through its vendor Lexis Nexis and thus had actual knowledge that Plaintiffs were not liable on subject loan #1 and subject loan #2.

98. Experian violated 15 U.S.C. §1681i(a)(1) by failing to conduct a reasonable investigation to determine whether the disputed information was accurate and to subsequently delete or correct the information in Plaintiffs' credit files.

15

99. Had Experian taken any steps to investigate Plaintiffs' valid disputes, it would have determined that subject loan #1 and subject loan #2 were discharged in Plaintiffs' bankruptcy on September 8, 2015.

100. Experian violated 15 U.S.C. §1681i(a)(2) by failing to provide notification of Plaintiffs' disputes to RoundPoint. Upon information and belief, Experian also failed to include all relevant information as part of the notice to RoundPoint regarding Plaintiffs' disputes that Experian received from the Plaintiffs.

101. Experian violated 15 U.S.C. §1681i(a)(4) by failing to review and consider all relevant information that it received from Plaintiffs and RoundPoint with regard to subject loan # and subject loan #2.

102. Experian violated 15 U.S.C. §1681i(a)(5) by failing to delete or modify the inaccurate information that was the subject of Plaintiffs' disputes.

103. Experian violated 15 U.S.C. §1681i(a)(5)(B) by reporting disputed information without certification from RoundPoint that the information was complete and accurate, and without sending notice of the re-reporting to Plaintiffs. The lack of notice and correction caused Plaintiffs to pull their credit multiple times, only to find that the inaccurate reporting remained. The multiple necessary inquiries had a continued negative impact on Plaintiffs' credit worthiness and credit scores.

104. Since all of Plaintiffs' other accounts were reporting as "$0 balance owed," "included in bankruptcy," or "discharged," Experian should have investigated why the RoundPoint trade line is reporting anything other than a $0 balance amount, a $0 past due amount, or a $0 monthly payment amount.

16

105. Moreover, after Plaintiffs' written detailed disputes, Experian had specific information related to Plaintiffs' bankruptcy case, and subsequent discharge order, which included subject loan #1 and subject loan #2.

106. Experian knew that the inaccurate designation of subject loan #1 and subject loan #2 in Plaintiffs' credit files under the RoundPoint trade line as delinquent, in default, and with high balances after their bankruptcy discharge would have a significant adverse affect on Plaintiffs' credit worthiness and ability to receive a "fresh start" after completing their bankruptcy.

107. The FCRA requires that the credit reporting industry implement procedures and systems to promote accurate credit reporting.

108. Despite actual knowledge that Plaintiffs' credit files contained erroneous information, Experian readily sold Plaintiffs' inaccurate, incomplete, and misleading reports to one or more third parties, thereby misrepresenting facts about Plaintiffs and, ultimately, Plaintiffs' creditworthiness.

109. By deviating from the standards established by the credit reporting industry and the FCRA, Experian acted with a reckless disregard for its duties to report accurate and complete consumer credit information.

110. It is Experian's regular business practice to continually report disputed information without taking the required investigatory steps to meaningfully verify such information as accurate.

111. Experian's perpetual non-compliance with the requirements of the FCRA is indicative of the reckless, willful, and wanton nature of its conduct in maintaining Plaintiffs' credit files and reporting their credit information.

17

112. Experian acted reprehensively and carelessly by reporting and re-reporting Plaintiffs as continually delinquent, in default, and owing a high past due balance on subject loan #1 and subject loan #2 after Plaintiffs received a bankruptcy discharge.

113. Experian has exhibited a pattern of refusing to correct consumer credit files despite being on notice of patently false, incomplete, and materially misleading information contained in such files, ultimately valuing its own bottom line above its grave responsibility to report accurate data on consumers.

114. As stated above, Plaintiffs were severely harmed by Experian's conduct.

**WHEREFORE**, Plaintiffs SUEANNE and DERRICK HAMILTON respectfully pray this Honorable Court for the following relief:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

b. An order directing that Experian immediately delete all of the inaccurate information from Plaintiffs' credit reports and credit files;

c. Award Plaintiffs actual damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;

d. Award Plaintiffs statutory damages of $1,000.00 for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;

e. Award Plaintiffs punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;

f. Award Plaintiffs costs and reasonable attorney's fees as provided under 15 U.S.C. § 1681n and 15 U.S.C. §1681o; and

g. Award any other relief as this Honorable Court deems just and appropriate.

### COUNT III - VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
(PLAINTIFFS AGAINST TRANSUNION)

115. Plaintiffs restates and reallege paragraphs 1 through 67 as though fully set forth herein.

116. TransUnion is a "consumer reporting agency" as defined by 15 U.S.C. §1681a(f).

117. TransUnion is a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. §1681a(p).

118. At all times relevant, the above mentioned credit reports were "consumer reports" as that term is defined by §1681a(d).

119. If a consumer notifies a credit reporting agency of a dispute concerning the accuracy of any item of credit information, the FCRA requires the credit reporting agency to reinvestigate free of charge and record the current status of the disputed information, or delete the item within 30 days of receiving the dispute. 15 U.S.C. §1681i(a)(1)(A).

120. Plaintiffs provided TransUnion with all relevant information and documentation in their requests for investigation and reinvestigation to reflect their bankruptcy discharge and to reflect that they are no longer personally liable on subject loan #1 and subject loan #2.

121. TransUnion prepared Plaintiffs' credit reports containing inaccurate, incomplete, and materially misleading information by reporting subject loan #1 and subject loan #2 with amounts past due, balances greater than $0, monthly payment amounts, and multiple payment history delinquencies, when in fact Plaintiffs had received a bankruptcy discharge, owed no past due amounts, no balances, and no scheduled payment amount on subject loan #1 and subject loan #2.

122. Moreover, Transunion failed to report the RoundPoint trade lined as discharged in bankruptcy, including the failure to communicate that Plaintiffs disputed the reporting of subject loan #1 and subject loan #2.

123. TransUnion violated 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in preparation of the consumer reports it

furnished and refurnished regarding Plaintiffs. On numerous occasions, TransUnion has prepared patently false, incomplete, and a materially misleading consumer reports concerning the Plaintiffs.

124. TransUnion violated 15 U.S.C. §1681i(a)(1) by failing to conduct a reasonable investigation to determine whether the disputed information was accurate and to subsequently delete or correct the information in Plaintiffs' credit files.

125. Had TransUnion taken any steps to investigate Plaintiffs' valid disputes, it would have determined subject loan #1 and subject loan #2 were discharged in Plaintiffs' bankruptcy on September 8, 2015.

126. TransUnion violated 15 U.S.C. §1681i(a)(2) by failing to provide notification of Plaintiffs' disputes to RoundPoint. Upon information and belief, TransUnion also failed to include all relevant information as part of the notice to RoundPoint regarding Plaintiffs' disputes that TransUnion received from the Plaintiffs.

127. TransUnion violated 15 U.S.C. §1681i(a)(4) by failing to review and consider all relevant information that it received from RoundPoint with regard to subject loan #1 and subject loan #2.

128. TransUnion violated 15 U.S.C. §1681i(a)(5) by failing to delete or modify the inaccurate information that was the subject of Plaintiffs' disputes.

129. TransUnion violated 15 U.S.C. §1681i(a)(5)(B) by reporting disputed information without certification from RoundPoint that the information was complete and accurate, and without sending notice of the re-reporting to Plaintiffs. The lack of notice and correction caused Plaintiffs to pull their credit multiple times, only to find that the inaccurate reporting remained. The multiple necessary inquiries had a continued negative impact on Plaintiffs' credit worthiness and credit scores.

130. Since all of Plaintiffs' other accounts were reported as "$0 balance owed," "included in bankruptcy," or "discharged," TransUnion should have investigated why the RoundPoint trade line was reporting anything other than a $0 past due amount, $0 balance amount, or a $0 monthly payment amount, and no post-discharge delinquent information.

131. Moreover, after Plaintiffs' written detailed disputes, TransUnion had specific information related to Plaintiffs' bankruptcy case, and subsequent discharge order, which included subject loan #1 and subject loan #2.

132. TransUnion knew that the inaccurate designation of subject loan #1 and subject loan #2 in Plaintiffs' credit files under the RoundPoint trade line as delinquent, in default, and with high balances owed after their bankruptcy discharge would have a significant adverse effect on Plaintiffs' credit worthiness and ability to receive a "fresh start" after completing their bankruptcy.

133. The FCRA requires that the credit reporting industry implement procedures and systems to promote accurate credit reporting.

134. Despite actual knowledge that Plaintiffs' credit files were erroneous, TransUnion readily sold Plaintiffs' inaccurate, incomplete and misleading report to one or more third parties, thereby misrepresenting Plaintiffs and, ultimately, Plaintiffs' creditworthiness.

135. By deviating from the standards established by the credit reporting industry and the FCRA, TransUnion acted with a reckless disregard for its duties to report accurate and complete consumer credit information.

136. It is TransUnion's regular business practice to continually report disputed information without taking the required investigatory steps to meaningfully verify such information as accurate.

137. TransUnion's perpetual non-compliance with the requirements of the FCRA is indicative of the reckless, willful, and wanton nature of its conduct in maintaining Plaintiffs' credit files and reporting their credit information.

138. TransUnion acted reprehensively and carelessly by representing to Plaintiffs that subject loan #1 and subject loan #2 were not reporting in their TransUnion credit files, when in fact TransUnion continued to maintain inaccurate information in Plaintiffs' credit files for subject loan #1 and subject loan #2.

139. TransUnion has exhibited a pattern of refusing to correct consumer credit files despite being on notice of patently false, incomplete, and materially misleading information contained in such files, ultimately valuing its own bottom line above its grave responsibility to report accurate data on consumers.

140. As stated above, Plaintiffs were severely harmed by TransUnion's conduct.

**WHEREFORE**, Plaintiffs SUEANNE and DERRICK HAMILTON respectfully pray this Honorable Court for the following relief:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

b. An order directing that TransUnion immediately delete all of the inaccurate information from Plaintiffs' credit reports and credit files;

c. Award Plaintiffs actual damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;

d. Award each Plaintiffs statutory damages of $1,000.00 for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;

e. Award Plaintiffs punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;

f. Award Plaintiffs costs and reasonable attorney's fees as provided under 15 U.S.C. § 1681n and 15 U.S.C. §1681o; and

g. Award any other relief as this Honorable Court deems just and appropriate.

## COUNT IV- VIOLATIONS OF THE DISCHARGE INJUNCTION
### (SUEANNE AGAINST ROUNDPOINT)

141. Sueanne restates and realleges paragraphs 1 through 67 as though fully set forth herein.

### a. Section 11 U.S.C. §524(a)(2)

142. Pursuant to 11 U.S.C. §524(a)(2), a discharge order "operates as an injunction" against acts to collect discharged debts.

143. "Section 524(a)(2) enjoins an act to collect a discharged debt, so a creditor that attempts to collect a discharged debt is in contempt of the bankruptcy court that issued the order of discharge." *Cox v. Zale Delaware, Inc.,* 239 F.3d 910, 915 (7th Cir. 2001).

144. Punitive damages may be awarded for violations of the bankruptcy discharge, and are especially appropriate when a party acts in "clear disregard and disrespect of the bankruptcy laws." *In re Vazquez*, 221 B.R. 222, 231 (Bankr. N.D. Ill.1998). Punitive damages of four to ten times the amount of compensatory damages may be appropriate for willful violations of the bankruptcy injunction. *Id*.

### b. RoundPoint's conduct was perpetual, willful, and wanton

145. RoundPoint violated the discharge injunction by willfully attempting to collect subject loan #1 with actual knowledge of Sueanne's bankruptcy and the discharged status of subject loan #1.

146. Upon information and belief, RoundPoint's loan onboarding department reviewed its predecessor Lenderlive's records at the time of transfer of servicing rights and discovered that subject loan #1 was discharged. Despite having actual knowledge of the discharged status of subject loan #1, RoundPoint initiated efforts to collect on subject loan #1.

147. RoundPoint should have implemented procedures and trained its employees in order to discourage and also prevent willful and wanton violations of the Bankruptcy Code.

148. RoundPoint's conduct demonstrates that it has no such system in place to protect the rights of consumers protected by the Bankruptcy Code.

149. Based on the broad language of the Bankruptcy Code, RoundPoint willfully sought to collect subject loan #1 from Sueanne in violation of the discharge injunction, thus warranting sanctions and punitive damages to deter future conduct of a similar nature.

**WHEREFORE**, Plaintiff SUEANNE HAMILTON requests that this Honorable Court:

a. Hold RoundPoint in civil contempt of the Order or Discharge pursuant to 11 U.S.C. §§524 and 105;

b. Order RoundPoint to pay Sueanne for her actual damages in an amount to be determined by the court as a result of the civil contempt of the Order of Discharge pursuant to 11 U.S.C. §§524 and 105;

c. Order RoundPoint to pay punitive damages in an amount to be determined by the court for the civil contempt of the Order of Discharge pursuant to 11 U.S.C. §§524 and 105;

d. Order RoundPoint to pay Sueanne reasonable legal fees and expenses for violations of the Order of Discharge pursuant to 11 U.S.C.; §§524 and 105; and

e. Provide such other and further relief as the Court may deem just and proper.

### COUNT V – VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD ACT
(SUEANNE AGAINST ROUNDPOINT)

150. Sueanne restates and realleges paragraphs 1 through 67 as through fully set forth herein.

151. Sueanne is a "person" and a "consumer" as defined in ICFA, 815 ILCS 505/(c) and (e) respectively.

152. RoundPoint is engaged in commerce in the State of Illinois with regard to Sueanne, subject loan #1, and subject property #1. RoundPoint specializes in lending, servicing, and debt

collection, which are activities within the stream of commerce and utilized in their regular course of business.

153. The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") states:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. 815 ILCS 505/2.

**a. Unfairness**

154. RoundPoint violated 815 ILCS 505/2 by engaging in unfair and deceptive acts or practices by using fraud, deception, and misrepresentations in its attempt to collect subject loan #1 after Sueanne's bankruptcy discharge.

155. RoundPoint's demands for payment on subject loan #1, which was duly scheduled and subsequently discharged in Sueanne's bankruptcy, represents the use of false pretenses and misleading communication to attempt to collect a debt that was not owed at the time the demands for payment were made.

156. It was unfair for RoundPoint to mislead Sueanne into believing subject loan #1 is still owed, when it was not.

157. It was unfair for RoundPoint to seek to collect subject loan #1 from Sueanne through constant dunning letters and derogatory credit reporting.

158. It was unfair for RoundPoint to attempt to dragoon Sueanne into making payments on an uncollectible debt by repeatedly sending Sueanne dunning letters.

159. RoundPoint intended that Sueanne rely on its unfair acts.

### b. Deception

160. RoundPoint's demands for payment on subject loan #1 represent the use of deception, fraud, and false pretense in an attempt to collect a debt because it was not owed at the time the demands for payment were made.

161. RoundPoint's demands were deceptive because they were systematically calculated to mislead Sueanne into believing that subject loan #1 was owed, when in fact subject loan #1 was discharged in Sueanne's bankruptcy on September 8, 2015.

162. RoundPoint's demands for payment were systematically calculated to induce payment on a debt that is no longer owed.

163. Such deceptive conduct is harmful to Illinois consumers as it can result in Illinois consumers paying debts that are not owed.

164. Upon information and belief, attempting to collect debts discharged in bankruptcy from Illinois consumers is an unfair and deceptive business practice willfully employed by RoundPoint and is done on a mass scale.

165. As pled above, Sueanne has suffered damages as a result of RoundPoint's unlawful collection practices.

166. An award of punitive damages is appropriate because RoundPoint's conduct described above was outrageous, willful and wanton, showed a reckless disregard for the rights of the Sueanne and consumers, generally, and Sueanne had no choice but to submit to the continued dunning letters.

**WHEREFORE**, Plaintiff SUEANNE HAMILTON requests that this Honorable Court:

a. Enter judgment in Sueanne's favor and against RoundPoint;

b. Award Sueanne her actual damages in an amount to be determined at trial;

c. Award Sueanne punitive damages in an amount to be determined at trial;

d. Award Sueanne reasonable attorney's fees and costs pursuant to 815 ILCS 505/10a(c); and

e. Award any other relief their Honorable Court deems equitable and just.

**Plaintiffs demand trial by jury.**

Respectfully Submitted,

/s/ Mohammed O. Badwan

Mohammed O. Badwan, Esq. ARDC#6299011
*Counsel for Plaintiffs*
Sulaiman Law Group, Ltd.
900 Jorie Blvd, Ste 150
Oak Brook, IL 60523
Phone: (630) 575-8181
Fax: (630) 575-8188

27